11 So.2d 749

**ROWE v. STATE.**

**3 Div. 379.**

Supreme Court of Alabama.

Jan. 21, 1943.

620

622

E. W. Wadsworth, of Montgomery, for appellant.

Wm. N. McQueen, Atty. Gen., and Bowen W. Simmons, Asst. Atty. Gen., for the State.

THOMAS, Justice.

The indictment was for murder in the first degree, in two counts, and was in compliance with the law. Wilson v. State, Ala.Sup., 8 So.2d 422.[1] The verdict was "guilty of murder in the first degree and fix his punishment at death." The sentence and judgment of the court were in conformance thereto. No question for review is presented by the record or by defendant's counsel as to any compliance of the law preceding the date of the trial.

Defendant's recital of the facts is "that David Blakey's dead body was found in the Alabama River November 28, 1941, some six or seven miles below the Birmingham Highway Bridge. The evening of the 12th of that month, he met Charlie Ray Holland and Ellis Howard Rowe, drank and rode around with them, and alive or dead, was thrown from this bridge by one or both of them, with his hands tied." The two men were indicted jointly and tried separately. This defendant filed pleas of not guilty and not guilty by reason of insanity and was given the death sentence by the verdict of the jury.

This court has held that circumstantial evidence may be admitted to prove the corpus delicti and is sufficient if such is its effect. McDowell v. State, 238 Ala. 101, 189 So. 183; Hill v. State, 207 Ala. 444, 93 So. 460; Matthews v. State, 55 Ala. 187; Ryan v. State, 100 Ala. 105, 14 So. 766; Hunt v. State, 135 Ala. 1, 33 So. 329. That is, facts and circumstances tending prima facie to prove the corpus delicti may be aided by the admissions or con-

---

[1] Ante, p. 1.

fessions of accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction of guilt. Wilson v. State, Ala.Sup., 8 So.2d 422;[1] McDowell v. State, supra; Henry Daniels v. State, post, p. 675, 11 So.2d 756; Hill v. State, supra; Ryan v. State, supra; Stewart v. State, 18 Ala.App. 92, 89 So. 391.

■ The wounds on the body of deceased were described by expert and non-expert witnesses. There is no requirement of law that the witness describing the injuries to the body must be an expert. Pitts v. State, 140 Ala. 70, 37 So. 101; Hill v. State, 146 Ala. 51, 41 So. 621. To a better understanding of the objections and exceptions of counsel for the defendant to the introduction of evidence, and the insistence that certain refused affirmative charges requested as to the second count were error, the substance of some of the evidence of the state toxicologist as a witness for the state will be set out.

■ We hold that there were tendencies of evidence that warranted the trial court in submitting both counts of the indictment to the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. There was no error in refusing defendant's charges C, D, E and F. Code 1940, T. 15, § 259, Form 79. The evidence shows no material variance as to either count. Stone v. State, 115 Ala. 121, 22 So. 275; State v. Seay, 3 Stew. 123, 20 Am.Dec. 66. The authorities on a variance are collected, in a criminal case, in Milam v. State, 240 Ala. 314, 319, 320, 198 So. 863.

■ Many of the refused charges ignore that death could have resulted from injuries alleged under the two counts of the indictment. For example, charge A ignores count 1 and demands an acquittal based on death prior to the impact to the water.

■ Charges B, C and D assume death by impact with the water and ignore the fact that death could have been caused as charged in the other count, by "striking with a rock or some hard substance."

■ Charges F, G and L ignore other causes of death than by drowning.

■ Charge M ignores other means of death charged in count 2 and instructs the jury to predicate verdict of death by impact with the waters. Charge O fails to predicate belief of jury on the evidence.

Lewis v. State, 220 Ala. 461, 125 So. 802. Charge P is faulty for ignoring the other means of death available to the jury under the evidence and charged in count 2. The same is true of charge Q. We find no error in refusing the charges indicated above.

■ The record indicates objection to the introduction of the confession of this defendant. However, the necessary predicate was proven and preceded the introduction of the confession in evidence. Henry Daniels v. State, supra; Hunt v. State, 135 Ala. 1, 33 So. 329. In this action of the trial court there was no error.

■ The defendant had pleaded not guilty and not guilty by reason of insanity. The question of guilt or innocence was for the jury and was properly submitted. The record has been carefully examined and there is nothing that would indicate defendant's insanity (taking into consideration the conduct of the defendant on the night and at the time of the homicide), or to warrant the submission of the issue of insanity to the jury. Peters v. State, 240 Ala. 531, 200 So. 404. The rules that obtain as to insanity that will excuse from crime are contained in Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193; Boswell v. State, 63 Ala. 307, 35 Am.Rep. 20.

In the oral charge of the court the jury were instructed as follows: "The defendant, to this indictment, pleads, first, not guilty. The moment he pleads not guilty, the burden of proof rests upon the State of Alabama to prove his guilty (guilt) beyond a reasonable doubt. Then he says that he is not guilty by reason of insanity. Well, for a person to be insane, the law says that they must, that that must afford a very high degree of proof; that they are required to show that they must not know the difference between right and wrong, or have some objective influence that makes them commit a crime, although they do know the difference; but, frankly, I charge you, there is no evidence of insanity in this case."

This charge proceeds further with the statement that there is evidence that the defendant was drunk and that the law says that a person under the influence of liquor "to be so drunk as to excuse from crime, he has to be so drunk that he is incapable of forming a specific intent. Now, if he

has so proven that he was incapable of entertaining a specific intent, then it could not be murder in the first or second degree; either; it would be either manslaughter in the first or second degree. But that is the test required in drunkenness; that is, the party was so drunk that he is incapable of forming an intent."

The record recites that when the court had delivered the oral charge "Both sides announced 'satisfied' with the charge of the court." The court then said: "Now, I have four charges that I give you at the instance and request of the defendant. They are not in conflict with anything the Court has heretofore charged you, they are a part of the law, and should be carried by you into the jury box and be considered along with the oral charge of the court when you examine the evidence in this case in the light of the law. (Reads charges to the jury.) Retire and make up your verdict. It should be a fair and an impartial verdict. It must be a unanimous verdict. Take these charges, and whatever exhibits you have, select your foreman and arrive at your verdict."

There was evidence of unwillingness or failure to attend school, of immorality, etc., but no evidence of insanity. Emotional insanity or moral obliquity will not sustain plea of insanity. Hall v. State, 208 Ala. 199, 94 So. 59; Boswell v. State, 63 Ala. 307, 35 Am.Rep. 20; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193. Among the given charges was charge one that: "The court charges the jury that you may look to the acts and declarations of defendant, and to all the evidence in the case to ascertain whether he was drunk or insane."

Appellant's counsel recites the evidence which he thinks shows insanity, viz.: that defendant's father worked intermittently with WPA, got in jail for being drunk; that he had a stepmother and there were eight other children beside himself, most of them small half brothers and sisters; that the defendant gave trouble, refused to go to school, married a loose woman; joined the army and was discharged; thereafter enlisted under his two first names and when his finger prints were taken, he was again discharged from the army; that he persistently frequented honky tonks; associated with loose characters and on the fateful day, drinking heavily alone and with others and with the deceased, claimed himself to be a British Cadet, and in school "never went beyond the fourth grade." This is the evidence upon which defendant's counsel insists that the charge of insanity should have been submitted to the jury. Code 1940, T. 7, § 270.

This statute comes to us from the Code of 1852 unchanged. A judicial interpretation of the last clause of the statute by this court was after its codification in the Revised Code of 1867. In Dugger v. Tayloe, 46 Ala. 320, Mr. Justice Saffold said: "The charge given by the court, on the effect of the evidence, does not appear to have been asked by either of the parties. Such a charge is forbidden to be given. Revised Code, § 2678 [Code 1940, Tit. 7, § 270]. There is no necessity for it, because the jury will be apt to perceive the right when the evidence is so entirely on one side as to justify the charge. In this case the evidence was of such a character that its proper interpretation to the jury necessarily involved a declaration of its effect. There was, at most, only error without injury. Hill v. State, 43 Ala. 335."

And like conclusion is announced in Thornton v. State, 18 Ala.App. 225, 90 So. 66. In Bristow v. State, 24 Ala.App. 439, 136 So. 837, it was observed: "As said by the late, learned, and lamented Mr. Justice Somerville, for our Supreme Court, in the opinion in the case of Goff et al. v. Sellers, 215 Ala. 489, 111 So. 210, 211: 'Section 9507, Code 1923 (section 2274, Code of 1852) [Code 1940, Tit. 7, § 270], declares that the court "shall not charge upon the effect of the testimony, unless required to do so by one of the parties." It has been held that this section "was not intended to abridge the original, inherent power of the court to direct the attention of the jury to undisputed, admitted facts." Dennis v. State, 112 Ala. 64, 20 So. 925; Tidwell v. State, 70 Ala. 33. And, "when the record shows affirmatively that certain facts are clearly shown and not disputed— not made any part of the contention—then it is not error if they be assumed in the charge to be facts, and stated as such without hypothesis." ' * * *"

The same conclusion was announced in Vinson v. State, 29 Ala.App. 234, 194 So. 705, 708, where is found the observation that: " * * * The controlling statute itself is a complete answer to the proposition. Section 9507, Code 1923 [Code 1940, Tit. 7, § 270], provides: 'The court may state to the jury the law of the case, and

may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, *unless required to do so by one of the parties.*' (Italics supplied). It will be noted by the express terms of the statute, supra, the defendant had the right to require the court to charge upon the effect of the evidence. Moreover, as to the point under discussion, all the evidence adduced upon the trial of this case tended to show that deceased was a trespasser on the occasion, and where this is true, no conflict in the testimony upon the point, the court had the inherent power to so charge even if not required by one of the parties to do. * * * Dennis v. State, 112 Ala. 64, 20 So. 925; Tidwell v. State, 70 Ala. 33. * * *"

In Cole v. State, 16 Ala.App. 55, 58, 75 So. 261, 264, Judge Brown states the rule that obtains as follows: "And if the evidence is in dispute, or affords conflicting inferences, it is reversible error for the court to charge on the effect of the evidence in the oral charge. Will Doby v. State [15 Ala.App. 591], 74 So. 724; Louisville & N. R. Co. v. Godwin, 191 Ala. 498, 67 So. 675; Mayer v. Thompson-Hutchison Co., 116 Ala. 634, 22 So. 859."

To the same effect are Prince v. State, 100 Ala. 144, 14 So. 409, 46 Am.St.Rep. 28; Manning v. State, 217 Ala. 357, 116 So. 360; Jackson v. State, 226 Ala. 72, 145 So. 656; Resmondo v. State, 24 Ala. App. 566, 138 So. 425.

We have examined the cases cited in Code 1940, T. 7, § 270, p. 267, and in each of them it was shown that such charge on the effect of the evidence was given where there was a disputed question or inference to the contrary.

There are other decisions to the effect that the provisions of the code touching this insistence are that the court may state to the jury the law of the case and also the evidence when the same is disputed, "but shall not charge upon the effect of the testimony, unless required to do so by one of the parties." Code 1940, T. 7, § 270.

It is also held that if there is error to charge orally on the effect of the evidence, without a written request, the same instruction made in writing cures such an error. O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 462, 168 So. 580.

■■ Such are the decisions of this and the Court of Appeals. However,

we have examined the record and find no evidence discharging the burden of proof that the law casts upon a defendant to show his insanity within the rules that obtain and that excuses from crime. With that understanding of the evidence and the rules of law that obtain, we will say there was no exception taken to the oral charge of the court, and we rest our judgment thereon. There was nothing presented to this court for review as to the instruction to the jury.

■ Under the duty imposed upon this court to examine the record as touching introduction of photographs contained therein, we are of opinion that they were properly admitted and were necessary to indicate how the body of the deceased was bound as to hands before he was cast into the stream. The fact that these photographs are gruesome will not necessitate a reversal of this cause. They were necessary and material as pertinent evidence preceding the questions to the state toxicologist as to whether a person stricken with blows on the head, with hands tied as shown in the pictures, would survive after being thrown from the bridge into the river. It is insisted that the question called for no expert opinion and should not have been allowed in evidence. Birmingham Elec. Co. v. Ryder, 225 Ala. 369, 144 So. 18; Landham v. Lloyd, 223 Ala. 487, 136 So. 815.

Dr. Nixon, the State Toxicologist, was called to examine the body of the deceased, and stated that he had had much experience in examining dead human bodies and in forming an opinion as to the possibilities and the injuries indicated in causing death. The witness then stated there was a wound on the right jaw, breaking it, and that on the left front quandrant of the skull that went all the way through the skull and pressed the bone down; that he could not tell the instrument that had done this, but it was a hard substance with metallic elements or residue, that such wounds "could have produced his death." That his hands were tied then. The witness was then asked: "Hurled from the bridge into the river, with him (so tied), hurling him from the bridge over into the river, or pushing him off from the bridge, when they were down like that, would that have caused his death?" Objection was interposed and the witness answered: "I don't quite understand the question, Judge."

He was then asked: "With his hands tied, and if his head was in that condition that you say it was in, if he was hurled from the river bridge, with his hands tied, and the blows stricken on him, could he have maintained himself or sustained himself in the water to have gotten out".

The court sustained the objection to that part of the question "to have gotten out" but allowed the witness to answer the question as to the cause of death and the witness answered: "From the facts I found, the wounds on the body, the most serious injury was the injury to the jaw. That could have caused his death, I think."

The witness was cross-examined by defendant's counsel and stated that his duty as toxicologist is not confined to investigation of poisons only, but to the investigation of all violence. That he would investigate any case of violent death when the state calls him to do so. He said: "The deceased had one blow on the left frontal bone. I would say that a heavy blow there could cause a paralysis of the nerve centers. * * * I don't say that his death was caused from those blows. I say that death could have resulted from that blow, at the side of his head."

He testified further: "The man could have drowned; injured by the wound and thrown in the water and drowned." That he had examined many persons who had drowned and knew how to determine when such was the case. Lungs will not be full of water but usually contain some. "I couldn't say that this death was caused by drowning, because the lungs were decomposed so badly and eaten by things in the water. There was nothing of the lungs intact. There was decomposition of the tissues, the lungs had been dissipated, destroyed. I looked to see. * * * I looked in the chest cavity. He had the debris left from the decomposed lungs—they were practically gone. There was water all in his body, from the river. His body was broken in many places."

The foregoing testimony shows that Dr. Nixon was giving expert testimony rather than the conclusions that a nonexpert witness could draw from the knowledge of the same facts. There was no error of the trial court in its rulings as to the introduction of the testimony given by this witness.

We have tried, in the consideration of the questions presented, to follow the arguments of counsel. Having done this, and from our examination of the whole record, found no reversible error, the judgment of the circuit court is affirmed.

The date set for the execution of the sentence of the law on the defendant having passed pending this appeal, it is hereby ordered by this court, that Friday, the 26th day of March, 1943, be and the same is hereby set for the execution of the sentence of the law on this defendant.

Affirmed. Date of execution set for Friday, March 26, 1943.

All the Justices concur.

