LOTTINGER, Judge.
This is a suit in tort filed by petitioner, Donald M. Simoneaux, Sr., against Copoly-mer Rubber and Chemical Corporation (hereinafter referred to as Copolymer), and its liability insurer, Liberty Mutual Insurance Company, for personal injuries to petitioner while he was on the property of Copolymer. Copolymer and its insurer filed a third party petition against Insurance Company of North America, then liability insurer of Stauffer Chemical Company for indemnification of any judgment rendered against third party petitioner, under a “hold harmless” agreement between Copolymer and Stauffer. A second third party petition was filed by Insurance Company of North America against Mid-State Service Corporation, alleging liability on the part of Mid-State and its liability insurer, Great American Insurance Company.
After trial on the merits, the Lower Court awarded judgment in favor of plaintiff and against Copolymer and its liability insurer in the sum of $5,000.00, with legal interest from date of judicial demand until paid and in favor of Copolymer and Liberty Mutual and against the Insurance Company of North America in a like amount, as well as in favor of Insurance Company of North America and against Mid-State Service Corporation and its liability insurer, Great American Insurance Company, in the same amount, under the third party petitions. Judgment was finally rendered in favor of Great American Insurance and against Copolymer, Liberty Mutual and petitioner in the sum of $1,669.00, representing reimbursement of workmen’s compensation benefits which had been paid petitioner by Great American. Appeals were taken by Copolymer and Liberty Mutual Insurance Company, Insurance Company of North America, Mid-State Service Corporation and Great American Insurance Company The petitioner answered the appeals asking for an increase in quantum.
The facts disclose that during the year 1948 a right of way, or servitude, was sold by Reconstruction Finance Corporation (hereinafter referred to as RFC) to Consolidated Chemical Corporation (hereinafter referred to as Consolidated) to construct *747 one or more pipe lines across the property of RFC. Subsequently the property of RFC was sold to Copolymer, in which sale the purchaser specifically took cognizance of all prior servitude grants by RFC. Subsequently, during the year 1957, a supplemental agreement was entered into between Copolymer and Consolidated under which Consolidated was granted the right to install a third pipe line across the servitude acquired during the year 1948.
In 1960 Consolidated merged with Stauf-fer Chemical Company (hereinafter referred to as Stauffer). In October of 1962 Stauffer undertook to repair the pipe lines along its servitude and entered into a contract with Mid-State Service Corporation (hereinafter referred to as Mid-State) for the performance of said work.
There was a contractual indemnity agreement between Copolymer and Stauffer wherein Stauffer agreed to hold Copolymer harmless from any liability arising out of the use, maintenance or operation of the servitude. There was also a “hold harmless” agreement between Stauffer and Mid-State, however, this agreement only required indemnity if the employees, agents or representatives of Mid-State were found guilty of negligent conduct.
The record discloses that the accident to Simoneaux, who was an employee of Mid-State doing work under the contract between Mid-State and Stauffer, occurred on the property owned by Copolymer. The employees of Mid-State on this project were advised not to smoke on certain locations on the property of Copolymer because of the heavy industrial nature of the plants thereon. They were assigned a site at which they could smoke along a trail situated between the railroad and Bayou Monte Sano. There was a path used in this area for the employees to go to and from the smoking site, and some of them used it in coming to and from work.
On October 23, 1962, while petitioner was walking along this path situated on the property of Copolymer, a wooden manhole cover collapsed under him and petitioner fell into the manhole, severely bruising certain portions of his body and particularly sustaining injuries to his left knee.
The testimony reveals that at the time of the accident petitioner was an obese man weighing 347 pounds. The manhole cover was made of one by six boards which were held together by two pieces of two by fours. Fellow workers of petitioner had walked along the path which passed over the manhole cover on numerous occasions prior to the accident, however, they did not see the manhole cover as it was not apparent because it was covered with dirt and debris. The officials of Copolymer had no knowledge of the manhole, although it had been in existence for some fifteen years and although Copolymer had in its possession a blueprint which indicated that the line continued past its fence toward Bayou Monte Sano.
Although none of the fellow employees of petitioner actually saw him fall into the manhole, they were in the near vicinity and, upon hearing petitioner scream they ran to him and found him in the manhole standing over the collapsed cover. The testimony of the fellow employees was that the cover was splintered and that it looked very rotten and termite eaten.
The Lower Court correctly held that petitioner was an invitee upon the property of Copolymer. In Alexander v. General Accident, Fire and Life Assurance Company, La.App., 98 So.2d 730, this Court defined “trespasser”, “licensee” and “invitee” as follows:
“Most broadly, the following are the conventionally accepted distinctions between these classifications and the duties owed by the owner or the occupant of the premises to each:
(1) A trespasser is one who enters the premises without the permission of the occupier or without a legal right to do so; and towards the trespasser no duty exists in most instances except' to re *748 frain from willfully or wantonly injuring him.
(2) A licensee is one who enters the premises with the occupier’s expressed or implied permission, hut only (according to the conventional description) for his own purposes which are unconnected with the occupant’s interests; and to him in addition to the duty owed to a trespasser, is owed the duty of warning the licensee of latent dangers of the premises if actually known by the occupier.
(3) An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger.
See: Mercer v. Tremont & G. Ry. Co., La.App. 2 Cir., 19 So.2d 270, certiorari denied; Mills v. Heidingsfield, La.App. 2 Cir., 192 So. 786; 65 C.J.S. Negligence §§ 23 and 24 (trespassers), §§ 32 and 35 (licensees), §§ 43 and 45 (invitees); 38 Am.Jur. “Negligence”, Section 96 (invitees), 104 (licensees), 109 (trespassers); 2 Harper & James, The Law of Torts (1956), Sections 27.3 (trespasser), 27.8 and 27.9 (licensee), 27.12 (invitee); Pros-ser, Torts (2d Ed. 1955), Sections 76 (trespassers), 77 (licensees), and 78 (invitees.)”
There is no question but that petitioner was on the property at the implied invitation of Copolymer. A valuable consideration had been paid Copolymer for the servitude which it granted Consolidated (now Stauffer) during the year 1957. Such a consideration was also paid by Consolidated (now Stauffer) to RCF (the author in title of Copolymer) during the year 1948. These servitudes provided for the construction, maintenance and use of the pipelines across the grantor’s property by grantee. Under the provisions of these servitudes, Stauffer entered into a contract with Mid-State to perform the work which was being done at the time of the accident. Therefore, petitioner, an employee of Mid-State was on the property of Copolymer for the mutual advantage of Copolymer and Stauffer, the advantage to Copolymer being the express permission granted in the servi-tudes in return for which Copolymer was paid valuable considerations.
In Crittenden v. Fidelity and Casualty Co. of New York, La.App., 83 So.2d 538, the Court set forth the duty owed by an owner to an invitee as follows :
“The character of the defect or danger upon which liability of the owner of premises to invitees is predicated, is comprehensively treated in 65 C.J.S., Negligence, § 50, p. 541:
‘The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.’ ”
 The manhole into which petitioner fell had been in existence for a period of some fifteen years. During this period Copolymer had failed to inspect the pipe line which the manhole served, although Copolymer had a plat in its possession showing the existence of the pipe line. Copolymer was under a duty to discover all reasonably discoverable defects on its property and to warn invitees or correct the defects. Failure to so do renders Copolymer *749 negligent and, therefore, legally responsible for the injuries sustained by petitioner.
No contributory negligence was shown on the part of petitioner. The manhole cover was not apparent; it was covered with dirt and debris. Petitioner was at a site on Copolymer’s property where he had a right to be; as a matter of fact, he was using the path to the smoking area designated by the officials of Copolymer.
In the original servitude granted by RFC (now Copolymer) to Consolidated (now Stauffer) the grantee assumed “ * * * all liability for death of, or injury to, any persons whomsoever, * * *, growing out of, or in any way attributable to the construction, maintenance, existence or use of said pipelines.” Thus the Lower Court was correct in rendering a judgment in favor of Copolymer and Liberty Mutual on their third party demand against Stauf-fer’s insurer, the Insurance Company of North America.
The third party proceeding brought by Insurance Company of North America against Mid-State and its liability insurer, Great American Insurance Company, however, should have been dismissed by the Lower Court. The indemnification agreement between Stauffer and Mid-State provides that:
“Contractor further agrees to protect, indemnify, and save Consolidated (Stauf-fer) harmless from and against all claims, demand, and causes of action of every kind and character on account of personal injuries or injuries resulting in death to persons or damages to property in any way resulting from the willful or negligent acts or omissions of Contractor, Contractor’s agents, employees, or representatives.” (Parenthesis ours.)
As the accident, and the resulting injuries ' to petitioner was not occasioned through willful or negligent acts of Mid-State, its agents, employees or • representatives, no liability therefor would attach to Mid-State nor its liability insurer.
With regard to the intervention of Great American Insurance Company for reimbursement of workmen’s compensation benefits paid petitioner on behalf of its assured, Mid-State, the Lower Court was correct in granting an allowance therefore.
With regard to the question of quantum, Dr. Morris, who first examined petitioner on the day of the accident, October 23, 1962, testified that the only apparent injury was an abrasion to the skin below the kneecap. He found no injury to the kneecap and no evidence of fluid was present. Swelling and pain persisted, however, and on December 6, 1962, Dr. Morris referred petitioner to Dr. Dowell, an orthopedic surgeon. Both doctors found a pre-existing calcium deposit in the tendons which existed from the knee joint down to connection with the bones below the knee. Both doctors injected Cortisone to relieve pain and they agreed that the accident aggravated a pre-existing bursitis, causing swelling and pain. Petitioner was examined by Dr. Haslam who found fluid in the knee joint and patel-larcrepitation. Dr. Haslam, however, found the amount of fluid to be slight and also discovered some limitation of extension of the leg. From the evidence adduced, it appears that petitioner continued to have some pain to the date of trial (January, 1965). However, the evidence fails to disclose any appreciable loss of wages. The award by the Lower Court in the sum of $5,000.00 was neither excessive nor inadequate.
For the reasons hereinabove assigned, the judgment will be amended so as to dismiss the third party action filed by Insurance Company of North America against Mid-State and its liability insurer, Great American Insurance Company, and, as amended, said judgment will be affirmed. *750 All costs of this appeal will be paid by defendants.
Judgment amended and affirmed
Rehearing denied.