265 So.2d 185

Charles Edward PAYNE

v.

STATE.

8 Div. 38.

Court of Criminal Appeals of Alabama.

Feb. 8, 1972.

Rehearing Denied March 28, 1972.

Fred Blanton, Birmingham, for appel-
lant.

MacDonald Gallion, Atty. Gen., and W. Mark Anderson, III, Sp. Asst. Atty. Gen., for the State.

ALMON, Judge.

This is an appeal from a judgment of conviction of murder in the first degree. The jury fixed the punishment at life imprisonment.

The State's evidence tended to show that on the night of May 16, 1967, the appellant was in the American Legion Hut on Triana Boulevard in Huntsville where drinks were being served. He was intoxicated and boisterous. John P. Wise, a part-time manager-bartender in the establishment, was present. One of Wise's apparent duties was to keep the peace and quiet, or in common parlance, serve as "bouncer." During the course of the evening Wise and appellant were involved in several minor altercations, which ended with appellant's being escorted out of the club by Wise. Shortly thereafter, someone reported some difficulty in the parking lot in front of the club and Wise went out to investigate. He returned and then when another similar report was made to Wise, he again went outside. Shortly after Wise left on this occasion, one customer who was standing at the bar started out the front door but was pulled back by someone who said "Don't go out there now." This witness testified that while the front door was opened briefly he saw Wise and the appellant standing in the parking lot talking. A few minutes later three shots or "booms" were heard by the people inside and shortly thereafter Wise's body was found in the middle of the street in front of the club. He had been killed by three blasts from a

shotgun. When his body was discovered, the appellant was not at the scene.

No one saw the shooting but a taxi driver testified that on the night in question he picked the appellant up in front of the American Legion Hut and as he started to pull off, the appellant told him to stop and got out. The appellant then walked over to what appeared to be a 1957 Chevrolet, opened the trunk, and took out what the taxi driver thought was a rifle. Two men then emerged from the front door of the club, one in front of the other. The first man got into the cab and asked to be taken downtown. The other, who was about Wise's size, addressed himself to the appellant and said, "Put that up before the law gets here." The taxi driver then pulled off and when he was about a block away he heard what sounded like two rifle shots. On returning from downtown, the taxi driver observed a crowd in front of the club, saw an ambulance, and Wise's covered body.

After the police arrived and had begun securing the scene, two automobiles, one driven by an off-duty police officer and the other driven by appellant, were involved in a head-on collision on Triana Boulevard, directly in front of the American Legion Hut. Several witnesses identified the appellant as the possible killer and he was arrested. A Remington automatic .12 gauge shotgun was observed lying on the back seat of appellant's automobile, a 1956 Chevrolet. There was some testimony that the appellant grabbed the shotgun immediately after the accident and that the arresting officers took it away from him. Three .12 gauge shells were removed from the gun and four .12 gauge shells were found on the appellant when he was searched. Three Winchester Super X Mark 5, .12 gauge Naught Buck shotgun shell hulls were found lying near the body.

A state toxicologist was qualified as an expert in firearms identification. Based on microscopic comparisons of those shell hulls found at the body and others fired from the appellant's gun, it was his opinion that the three shells found at the scene were fired from the shotgun found in appellant's possession. It was also his opinion that the shots were fired from a distance of about fifteen feet.

■ The corpus delicti in a homicide prosecution, and evidence sufficient for a conviction for the crime of murder, may be established through circumstantial evidence. Brooks v. State, 248 Ala. 628, 29 So.2d 4; Rowe v. State, 243 Ala. 618, 11 So.2d 749; McDowell v. State, 238 Ala. 101, 189 So. 183. Such circumstantial evidence is sufficient if its effect on the jury's mind is to produce a conviction of the guilt of the accused beyond a reasonable doubt. Hall v. State, 40 Ala. 698; Brooks v. State, supra; Coleman v. State, 276 Ala. 513, 164 So.2d 704, reversed 377 U.S. 129, 12 L.Ed.2d 190, 84 S.Ct. 1152, (on other grounds). We have carefully examined the evidence and are convinced that it was sufficient to take the case to the jury and warrant the verdict returned.

■ The appellant argues that there should be a reversal of the case because of a denial of his motion for a change of venue. The basis of this motion was that appellant's family had a reputation for crimes of violence in Madison County and that newspaper coverage of the crime had been such that the appellant could not receive a fair and impartial trial.

In support of this motion, the appellant introduced several newspaper articles from the local papers concerning the event and other articles ranging back over a period of fifteen to twenty years which dealt with crimes other members of appellant's family had been involved in. The appellant also introduced the criminal records of ten members of appellant's family and the affidavits of twenty-eight people who stated that they did not believe the appellant could receive a fair trial in Madison County. Of these twenty-eight affiants most were from the appellant's rural community and all were personal acquaintances.

In rebuttal, the State subpoenaed several witnesses who had not talked to anyone about the case. These witnesses testified that they had either never heard of the appellant or that they had read something about the case in the newspapers. Only one of these witnesses had ever heard of appellant's family and she did not associate the family name with violence. All felt the appellant could receive a fair trial in Madison County. The State also introduced evidence which tended to show that the appellant or his counsel had instigated at least some of the publicity by calling the local paper and requesting a photographer be present when the appellant was released on bail, and then making a special trip back to the courthouse and posing for the pictures.

■ Newspaper publicity does not necessarily constitute grounds for a change of venue. Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565, cert. den. 258 Ala. 532, 63 So.2d 573; Collins v. State, 234 Ala. 197, 174 So. 296.

■ Whether a motion for a change of venue should be granted is a matter addressed to the sound discretion of the trial court and will not be disturbed except for gross abuse. *Littlefield,* supra; Mathis v. State, 280 Ala. 16, 189 So.2d 564, cert. den. 386 U.S. 935, 87 S.Ct. 963, 17 L.Ed. 2d 807; Cobern v. State, 273 Ala. 547, 142 So.2d 869. And the mere belief of the appellant or of his witnesses that he cannot receive an impartial trial is insufficient to entitle him to a change of venue. Patton v. State, 246 Ala. 639, 21 So.2d 844; Lee v. State, 246 Ala. 343, 20 So.2d 471; *Mathis,* supra. The burden of showing this to the reasonable satisfaction of the court is on the appellant. *Mathis,* supra; Tiner v. State, 271 Ala. 254, 122 So.2d 738; Boutwell v. State, 279 Ala. 176, 183 So.2d 774. After a careful examination of the record before us, we do not think appellant met that burden. We hold, therefore, that the motion for a change of venue was properly denied.

■ Appellant's motion for a continuance was overruled. The basis for this motion was that the attorneys for appellant had insufficient time to evaluate a psychiatrist's report and prepare an adequate defense.

According to the allegations of the motion, this written report was given to defense counsel on October 19, 1967, after some four months of observation of the appellant by the psychiatrist. The motion for continuance was made the following day. This was some twenty-five days before the trial of the case on November 13, 1967.

■ It is settled law that the matter of the granting or refusing of a motion for continuance is largely within the sound discretion of the trial court and the exercise of such discretion will not be disturbed except for gross abuse. See 6A Ala.Dig., Criminal Law, ☞586. We find no error in the denial of this motion.

[9] The trial judge refused to give the jury several written requested charges on the law of self-defense. One witness, who was sitting at a table in the American Legion Hut, testified that he saw the deceased walking toward the front door and that to the best of his knowledge the deceased was carrying a billy club. Then three or four minutes later the witness heard shots. This was all the evidence with reference to appellant's claim of self-defense.

Appellant was not in his home or other place in which he was relieved of any duty to retreat. The evidence tended to show that he had every opportunity to leave the scene, but instead waited outside until the deceased came out of the night club. Teague v. State, 120 Ala. 309, 25 So. 209.

■ In the absence of evidence tending to show both that the appellant was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was

able to retreat. It necessarily follows that the accused has the burden of producing evidence warranting both of such findings and that the discharge of that burden is one of the conditions precedent to his being entitled to having his claim of self-defense submitted to the jury. Naugher v. State, 105 Ala. 26, 17 So.2d 24; Cosby v. State, 269 Ala. 501, 114 So.2d 250. The trial judge was therefore correct in refusing to give these requested written charges.

Since appellant did not receive the death penalty, there is no merit in his claim of error on the part of the trial judge in qualifying the jury under the requirements of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

Defense counsel objected to the action of the trial court in allowing two state witnesses to make an in court identification of appellant because he was exhibited to these witnesses before trial for identification purposes without the aid of counsel.

The right to counsel as expressed in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, in 18 L.Ed.2d 1178, is not applicable to this case since the confrontation complained of occurred on May 16, 1967, several days prior to June 12, 1967, the effective date of *Wade* and *Gilbert*. Thus, we are presented with a due process question under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 19 L.Ed.2d 1199.

One of the two witnesses, whose in court identification was sought to be excluded, testified that he was standing among the spectators near the deceased body when the automobile which the appellant was driving was involved in an accident immediately in front of the scene. This witness stated that he approached the appellant's automobile and told a police officer, "That's the fellow that was talking to John [the deceased]."

Obviously this spontaneous identification, without any prearrangement by police, would not preclude a subsequent in court identification.

The other witness whose testimony was sought to be suppressed was the taxi driver who identified the appellant as the man who got into, and then out of, his taxi in front of the American Legion Hut and then walked over to the trunk of an automobile and withdrew what appeared to be a rifle.

Around midnight this witness received a call from his dispatcher and was told to go to the police station. When he arrived he observed the appellant sitting at a desk with a detective. This was approximately one hour after the fatal shooting.

There is no prohibition against viewing a suspect alone particularly when this occurs near the time of the alleged criminal act. Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245. We conclude that this confrontation was not so unnecessarily suggestive and conducive to mistaken identification as to deny appellant due process of law.

Finding no reversible error the judgment is due to be

Affirmed.

PRICE, P. J., and CATES and TYSON, JJ., concur.

## ON REHEARING

CATES, Judge.

We have received the following letter from counsel for appellant:

"In the opinion in this case rendered February 8, 1972, I note that John C. Tyson, III, concurred.

"It is known that Mr. Tyson was a member of the staff of the Attorney

General. I do not know whether or not he was a member when the brief was prepared for the State of Alabama in this case back in March of 1969.

"However, I would respectfully question the ethics of any judge passing on a matter which was in the office of the attorney general during the period he was there, whether or not he actually participated in preparation of the brief.

"I am, of course, not critical, but as a member of the Bar I do believe our Courts should avoid any possibility of criticism. This does seem possible in this situation."

■ Judge Tyson, as an Assistant Attorney General, was not assigned to criminal work after mid January, 1967. We do not consider that there is any ground—statutory, common law or ethical—which in this cause requires that Judge Tyson recuse himself.

The Attorney General and his staff are more than mere legal advisers. Thus, they have the power, in the interest of justice, to confess error. The Attorney General is a public servant whose office is created by the constitution; he is selected by the voters from the state at large. Cons. 1901 §§ 114 and 137, Code 1940, T. 55, §§ 228–244, as amended. He and his staff are paid by salaries, not fees.

Hence, notions of conflict of interest arising from being counsel in private litigation are not present. We do have constitutional and statutory grounds for judicial disqualification: Const. § 160 and Code 1940, T. 13, §§ 6 and 7. They are not here applicable.

■ The basic guideline—aside from the specific ordainments, supra—rests on the common law principle that no judge ought to act where from interest or any other cause, he is supposed to be partial to one of the suitors. Here we perceive no reason to impute a cause of bias. Thus, we readily distinguish Ex parte Cornwell, 144 Ala. 497, 39 So. 354.

■ The holding of prosecutorial office as distinguished from working on a concrete piece of litigation is not alone disqualifying for one who later becomes a judge. Thus, in 46 Am.Jur.2d, Judges, (p. 219) we find:

"§ 193. As attorney general.

"A judge hearing an appeal is not required to disqualify himself because he had, as attorney general, rendered an opinion concerning one of the points involved in the litigation. Generally, a judge who had been employed in the office of the attorney general is not disqualified to sit on a case involving a party who had been up before the attorney general. Nor is a judge disqualified where the case before him, in which the state is a party, was under study while he was a deputy attorney general but was not assigned to him then or otherwise brought to his attention.

"A supreme court judge who, before his elevation to the bench, was attorney general when a criminal case was tried but had nothing whatever to do with the trial, is not disqualified from hearing the case on appeal. Similarly, an attorney general who permitted the institution of quo warranto proceedings on relation of the attorney general, but who took no personal or official part in the litigation, is not disqualified to hear the case as a supreme court judge." (footnotes omitted.)

■ In State by Kobayashi v. Midkiff, 49 Haw. 252, 413 P.2d 249, the Supreme Court of that State issued the following syllabus:

"A judge is not disqualified in a case in which the State is a party merely by reason of having been a deputy attorney general while the case was in preparation and under study, when it was not assigned to him and he had no knowledge of it."

This seems proper to us with the qualification that the disqualifying knowledge of

 

the case must be more than mere awareness of the pendency of the matter.

Needless to say Judge Tyson has refrained from taking part in this extension of opinion.

Application for rehearing

Overruled.