Under an indictment charging murder in the first degree appellant was convicted of murder in the second degree and the jury fixed his punishment at twenty-five years in the penitentiary. Throughout the trial proceedings appellant was represented by Court-appointed counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent appellant on this appeal.
The evidence presented by the State was more than sufficient to sustain the verdict *Page 384 
of the jury and the judgment rendered thereon. Appellant did not testify in his behalf.
On June 24, 1977, appellant and the deceased, Ernest Howard Winchester, were both residing at the Forgotten Man Mission located at 1721 Pearson Avenue, Southwest, Birmingham, Alabama. This was a charitable mission known as a half-way house for ex-felons who did not have a place to live.
Joseph K. Morgan testified that he was associated with the Forgotten Man Mission on June 24, 1977, and had been connected with the mission house since 1976. Mr. Morgan knew both appellant and the deceased, but he was not present when an argument occurred between the deceased and appellant. There was testimony that during this argument appellant pulled out a pocketknife and stabbed the deceased nineteen times causing his death. After the stabbing Mr. Morgan was called back to the mission house and found the deceased prostrate on the kitchen floor. He appeared to be dead. Mr. Morgan found appellant sitting in a chair on the front porch and he asked him if he killed Mr. Winchester and he said, "yes," but he did not say anything else; that appellant appeared to be calm and not nervous or upset in any way. He further testified that two days later he attended Mr. Winchester's funeral in Tuscaloosa, Alabama, and observed him in an open casket.
On cross-examination Mr. Morgan testified that a new resident, Alvin Jackson, arrived on June 24, 1977, and he was called on the telephone and was asked what room he was to be assigned. Mr. Morgan asked to speak to one of the older residents and appellant came to the telephone. Mr. Morgan directed the appellant to show him a room upstairs in which he was to live.
Mr. Jack R. Parker testified that he was employed by the Jefferson County Coroner's Office and had served as Deputy Coroner since 1973. Prior to joining the Coroner's Office he had seven years investigative experience with the Jefferson County Sheriff's Department and had seen knife wounds on the bodies of deceased persons many times. He had a degree from Jefferson State University in mortuary science. His qualifications were not questioned by defense counsel. On June 24, 1977, he went to the Forgotten Man Mission house and examined the body of a man identified to him as Howard Winchester. He viewed the body of the victim and observed a "good bit of blood around the room."
This witness was present when an autopsy was performed on the victim and he observed nineteen slashing and penetrating knife wounds on the body of the deceased. He said that one of the wounds entered the left lung of the victim which caused him to bleed to death.
Alvin D. Jackson testified that he moved into the Forgotten Man Mission on June 24, 1977. On that day, Winchester and appellant began arguing. Jackson testified that appellant suddenly drew a pocketknife, the blade of which was approximately four inches long. Winchester had no weapon at all.
From the record:
 "Now, after the defendant got a knife out, what, if anything, did you see happen there between him and Mr. Winchester, if anything did happen?
"What happened?
 "A. Well, all I know is that they had got to arguing and using bad profanity.
"And he just started sticking him.
* * * * * *
 "A. There was a table up here (indicating), right in the middle of the dining room.
"Q. All right.
 "A. And he had pushed him all up against the table and started sticking him."
Jackson further testified that Winchester did not try to hit appellant: "He didn't even try to defend himself."
James L. Robertson testified that he resided at the Forgotten Man Mission on June 24, 1977. Robertson knew both appellant and the victim. About five-thirty, in the afternoon, Robertson was upstairs in his *Page 385 
room when he heard a noise which attracted his attention. Robertson came downstairs and saw the deceased and appellant scuffling. After walking into the office, Robertson walked back out and saw the deceased backing around the kitchen table, "hollering, `Don't stab me anymore, Grant.'" Appellant walked out on the front porch when the deceased fell on the kitchen floor.
Alvin Jackson was then recalled to testify. Jackson examined a knife shown to him and identified it as the weapon used by appellant to stab the deceased.
Jerry Frazier testified that on June 24, 1977, he investigated an incident at the Forgotten Man Mission in his capacity as a patrolman for the Birmingham Police Department. There he observed a body identified to him as being Howard Winchester. Appellant was sitting on the front porch. Frazier obtained from appellant a pocketknife and took appellant to the City Jail, after appellant was examined at Cooper Green Hospital because of his complaint of chest and shoulder pain.
Kenneth H. Glover testified that he was employed by the Birmingham Police Department. On June 24, 1977, he and Frazier investigated an incident at the Forgotten Man Mission. Glover testified that he was present at Cooper Green Hospital when appellant was examined. He observed no cuts, scratches, or bruises on appellant, with the exception of one scratch on one of appellant's hands.
David Barnett was called to testify for the defense. Barnett was a councilman for the Vocational Rehabilitation Service. On June 24, 1977, Barnett took Alvin Jackson to the Forgotten Man Mission, since he had no place to stay. When Barnett arrived, Kenneth Morgan was not present at the Mission; so he called him at home. Morgan spoke to appellant over the phone. After the call was finished, appellant led Barnett and Jackson upstairs to show Jackson a room. When the three men came downstairs, another man asked appellant, "Grant, do you know what you are doing?" This question was repeated twice, and the man appeared to be upset. Barnett left at this time. Barnett did not recognize a picture of Howard Winchester, which was shown to him.
Jack Parker was called as a defense witness. Parker testified that an examination of a blood sample taken from Howard Winchester revealed that the alcohol content in the blood was .15 percent.
Reverend Sam Browning testified that he was pastor and assistant director of the Forgotten Man Mission. On June 24, 1977, Browning received a phone call, telling him that there was trouble at the Mission. When Browning arrived there, he found appellant trying to use the telephone. Appellant told Browning he was trying to get himself some help. Earlier that day, Browning testified, Winchester had helped appellant fix an electric fan.
During redirect examination of James Robertson by the District Attorney, the following occurred:
From the record:
"Q. How long did you know Mr. Cooper, the defendant?
 "A. I don't know. We both done a lot of time in the penitentiary.
"MR. HASSINGER: May I approach the bench, Your Honor?
"THE COURT: All right.
 (Thereupon, ensued an off-the-record discussion, following which the following proceedings were had and done:)
 "MR. HASSINGER: Your Honor, I would object to that remark and ask for a mistrial.
"THE COURT: Let me say this to you, Mr. Robertson:
 "He just asked how long he knew him, and he replied by telling him where he had known him and how, and so forth.
 "That was not responsive to the question. I am going to instruct you, and I do instruct you, to answer the questions just like they are asked.
"Don't volunteer, don't explain anything.
 "If he says, `How long have you known him?' don't say, `We sat on the moon together nine months.' *Page 386 
"You say, `I knew him nine months.'
"Do you follow me?
"A. Yes, sir.
 "THE COURT: Now, ladies and gentlemen, let me say this to you:
"I do overrule the motion for a mistrial, —
"MR. HASSINGER: We except.
 "THE COURT: — but I do instruct you not to consider, on the question of the guilt, or innocence, of the defendant, any statement by this witness about where he knew him.
"That is not a fact in this case.
 "This man is being tried not for where he may have been at some other time, but he is being tried because a grand jury indicted him for first degree murder.
 "The indictment states: `— unlawfully and with malice aforethought killed Ernest Howard Winchester by stabbing him with a knife.' That is exactly what he is being tried for.
 "You are not to let some unresponsive remark of a witness prejudice you against the defendant and his right to a fair and impartial trial.
 "We are not trying him for where he may, or may not, have been at some other time. That is not proper for the witness to say that. I instruct you not to consider it.
 "Is there any one of you who feels like you cannot conscientiously disregard that?
 "Until this is answered, I am going to withdraw my ruling on the motion for a mistrial.
 "Is there any one of you who feels like you cannot disregard that statement of the witness in passing on the question of the guilt, or innocence, of this defendant?
 "If there is anyone that feels like they can't disregard it, I want you to raise your hand so that I will know how to proceed.
 "All right, no one raised his hand, so the Court will infer from that that the jury will not permit the unresponsive statement to affect their verdict one way or another.
 "All right, proceed. Overrule the motion for a mistrial. Proceed."
Appellant contends that the trial court erred in refusing to grant a mistrial, because the prosecution injected in the case evidence of his bad character before he had entered any evidence of his good character. Gamble, McElroy's Alabama Evidence, Section 27.01 (1), 3rd Ed. (citations omitted). There was no error for two reasons.
First, it should be noted that appellant brought out on the cross-examination of Kenneth Morgan that the Forgotten Man Mission was a half-way house for ex-felons without a home. Alabama Digest, Criminal Law, Section 1169 (2).
Secondly, the trial court exhaustively reprimanded the witness for replying unresponsively and similarly instructed the jury to disregard the response of the witness, as shown above. Kimbroughv. State, Ala.Cr.App., 352 So.2d 512, cert. denied, Ala.,352 So.2d 516.
Next appellant contends that the trial court erred in not allowing him to argue self-defense before the jury.
To sustain a claim of self-defense, it is necessary that the following conditions be established: (1) that the accused was in actual or apparent imminent peril; (2) that the accused was unable to retreat; and (3) that the accused was free from fault in bringing on the difficulty. Collier v. State, 57 Ala. App. 375,328 So.2d 626, cert. denied, 295 Ala. 397, 328 So.2d 629. If the undisputed evidence fails to establish one of these conditions, or there is no evidence warranting the finding of these conditions, the accused is not entitled to have his claim of self-defense submitted to the jury. Gamble, McElroy's Alabama Evidence, Section 457.02 (5), 3rd Ed. (citations omitted). The burden of establishing inability to retreat and the requisite state of imminent peril is on the accused. Kemp v. State,278 Ala. 637, 179 So.2d 762.
No evidence was presented that appellant was ever in any degree of peril; nor was there any evidence to imply that appellant *Page 387 
could not retreat. From the evidence presented it was undisputed that a vocal dispute rapidly escalated into a brutal onslaught upon Howard Winchester, who was unarmed, by the appellant. There was no error in the trial court's refusal to charge the jury on the law of self-defense under the facts of this case. A defenseless man was stabbed to death without any reason.
Appellant also urges that the trial court erred to reversal by failing to charge the jury on the lesser included offenses of first degree murder. This contention is only predicated on the fact that the trial court did not charge the jury on involuntary manslaughter. However, the trial court gave full, complete and comprehensive instructions on first degree murder, second degree murder, and first degree manslaughter.
Appellant did not request charges on involuntary manslaughter. In order that the question be reviewable, it is necessary that counsel submit written requested charges. Cooper v. State, Ala.Cr.App., 331 So.2d 752.
An accused is entitled to have the jury charged on a lesser included offense only where there is a reasonable theory from the evidence to support such a position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886. Manslaughter in the second degree is the unlawful killing of a human being without malice, either express or implied, and without intent to kill or inflict injury causing death, committed accidentally in the commission of an act not felonious or in the improper or negligent performance of a lawful act. Callahan v. State, Ala.Cr.App., 343 So.2d 551.
In Fulghum, supra, we find the following language:
 "Where it is clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree, and where it clearly shows from the evidence that the defendant was either guilty of murder or voluntary manslaughter or innocent, and, where there is no evidence tending to show that the killing was unintentional or accidental, a charge on manslaughter in the second degree is unnecessary and is not proper. Ware v. State, 147 Ala. 699, 41 So. 181 (1906); Ragsdale v. State, 134 Ala. 24, 32 So. 674 (1901); Pierson v. State, 99 Ala. 148, 13 So. 550
(1892)."
It was not error for the trial court to omit an instruction to the jury on involuntary manslaughter.
At the close of the State's case, appellant made the following motion, which was denied:
 "MR. HASSINGER: Your Honor, at this time we move for a directed verdict for failure of the State to prove a prima facie case.
"THE COURT: Overrule."
Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation or deliberation.Brown v. State, Ala.Cr.App., 348 So.2d 534. The State's evidence as detailed above is sufficient to sustain the appellant's conviction for murder in the second degree.
There was no error in the refusal of certain written charges requested by appellant as the principles of law embodied in the refused charges were adequately and substantially covered in the oral charge to the jury. Garraway v. State, Ala.Cr.App.,337 So.2d 1349; Slinker v. State, Ala.Cr.App., 342 So.2d 44.
In the absence of the jury appellant reserved two exceptions to the oral charge. Exceptions to the oral charge, or any part of it, to be availing, must be taken and reserved in the presence of the jury and before the jury retires. Lowery v. State, Ala.Cr.App., 342 So.2d 797.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 388