Donald Lewis Owen was indicted for capital murder in violation of § 13A-5-31(a)(5), Code of Alabama 1975. He was found "guilty as charged in the indictment" and was sentenced to life in prison without the possibility of parole. He raises six issues on appeal. The pertinent facts will be discussed as they arise below.
 I
The appellant contends that the State used its peremptory strikes to remove black jurors from the jury panel in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution; Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Article I, Section 6, of the Alabama Constitution. The appellant is white. Under prior decisions of this Court, the appellant does not have standing to assert, under the equal protection clause, that the State improperly used its peremptory strikes to remove black jurors from the jury panel. Pierce v. State,576 So.2d 236 (Ala.Crim.App. 1990); Bankhead v. State, 585 So.2d 97
(Ala.Crim.App. 1989); Bui v. State, 551 So.2d 1094
(Ala.Crim.App. 1988), aff'd, 551 So.2d 1125 (Ala. 1989), cert. filed withUnited States Supreme Court (No. 89-6271, December 12, 1989).
 II
The appellant next contends that the court erred in failing to grant his motion to suppress a shotgun and shotgun shells found in his house because, he argues, the evidence was discovered during an illegal search. This issue was previously raised by the appellant and determined adversely to him inOwen v. State, 418 So.2d 214 (Ala.Crim.App. 1982). Because the same facts were established during the suppression hearing in the case sub judice and during the case decided on appeal in 1982, and because the law has not changed in the intervening years, we adopt the rationale previously set out in the reported decision.[1] This Court's decision is further supported by Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 1095,108 L.Ed.2d 276 (1990), wherein the Supreme Court stated that a protective sweep was permitted under the Fourth Amendment "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer and others." The record reveals that the officers who entered the appellant's home possessed such a reasonable belief. Thus, we find that the trial court did not err in denying the motion to suppress.
 III
The appellant next contends that the trial court erred in denying his motion for mistrial, because, he contends, the prosecutor *Page 960 
improperly commented during closing arguments on the appellant's failure to testify. He contends that the prosecutor's comment that only "God and Donald Owen know" what went through his mind on the night of the murder was a direct reference to the appellant's failure to testify. (R. 1047).
"In evaluating a claim that the prosecutor's statement amounted to a comment on the defendant's failure to testify, 'the facts and circumstances of each case must be carefully analyzed to determine whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " Brinks v. State, 500 So.2d 1311, 1314
(Ala.Crim.App. 1986) (quoting McKissick v. United States,379 F.2d 754, 757 (5th Cir. 1967)). See also Marsden v. Moore,847 F.2d 1536 (11th Cir.), cert. denied, 488 U.S. 983,109 S.Ct. 534, 102 L.Ed.2d 566 (1988); Daly v. State, 442 So.2d 143
(Ala.Crim.App. 1983).
A review of the prosecutor's closing argument and the context in which the statement was made reveals that he was commenting on the validity of the appellant's mental disease or mental defect defense. During the closing argument, the prosecutor commented on the testimony of the appellant's witnesses who had worked with the appellant for many years prior to the murder and the psychiatric testimony supporting the appellant's plea. The prosecutor was simply arguing that the witnesses who observed the appellant's demeanor shortly after the murder were in a better position to form an opinion about the appellant's state of mind than witnesses who talked to the appellant at a later time.
In our judgment, the prosecutor's statement was not manifestly intended to be a reference to the appellant's silence. Nor was the comment of such a character that the jury would naturally and necessarily consider it a comment on the appellant's failure to testify. Rather than focusing on the appellant's failure to testify, the comment drew the jury's attention to the appellant's plea of mental disease or defect.See generally, Hannah v. State, 518 So.2d 182
(Ala.Crim.App. 1987); Brinks. Thus, the court did not err in denying the motion for mistrial.
 IV
The appellant contends that the trial court erred in refusing to allow the defense to re-call an expert witness. The record reveals that at the close of the evidence, a juror asked if he could ask one of the appellant's expert witnesses a question. The trial judge denied the request because he felt that re-calling the witness would give undue prominence to the expert's testimony and the witness had already fully testified concerning the diagnosis of other expert witnesses.
The trial court has discretion to reopen the evidence or re-call a witness prior to closing arguments. Johnson v. State,542 So.2d 341 (Ala.Crim.App. 1989); Wright v. State,487 So.2d 962 (Ala.Crim.App. 1985); Williams v. State, 364 So.2d 717
(Ala.Crim.App. 1978); Stewart v. State, 49 Ala. App. 679,275 So.2d 358 (Ala.Crim.App. 1973). We see no abuse of discretion on the part of the trial judge. See, e.g., Wright.
 V
The appellant next contends that the prosecutor made several improper and prejudicial remarks during closing arguments that require a reversal of his conviction. Control of closing arguments rests within the broad discretion of the trial court and the trial court's ruling will be reversed only for an abuse of that discretion. Sasser v. State, 494 So.2d 857
(Ala.Crim.App. 1986); Speigner v. State, 369 So.2d 39 (Ala.Crim.App.),writ denied, 369 So.2d 46 (Ala. 1979). The trial judge is in the best position to determine "when discussion by counsel is legitimate and when it degenerates into abuse." Sasser at 860. Counsel may comment, draw proper inferences, and draw conclusions from the evidence. Sasser; Speigner. The credibility of witnesses is also a legitimate subject of criticism and discussion by either party during closing arguments. Adams v. *Page 961 State, 484 So.2d 1143 (Ala.Crim.App. 1985); Clark v. State,462 So.2d 743 (Ala.Crim.App. 1984). A review of the record reveals that the comments cited by the appellant were either proper inferences drawn from the evidence or properly concerned the credibility of witnesses.
 VI
The appellant contends that the trial court erred in failing to charge the jury on any lesser included offenses because, he says, there was evidence that he was intoxicated. He also contends that he was entitled to a charge on self-defense.
Although there was testimony that the appellant told some of the expert witnesses that he drank anywhere from four to eight beers on the night of the murder, there is absolutely no evidence that he was intoxicated to any degree that would have prevented him from forming the requisite intent to kill. Furthermore, an officer testified that his speech was coherent and that he did not walk as if he were intoxicated. Another officer testified that the appellant did not appear to be intoxicated. Thus, the court did not err in failing to charge on intoxication. See, e.g., Childress v. State, 344 So.2d 799
(Ala.Crim.App.), cert. denied, 344 So.2d 806 (Ala. 1977).
When looking at the evidence as a whole, we also find that there was no justification for a charge on self-defense. The record reveals the following: The victim, Officer John Dotson, called in on his car radio at approximately 2:10 a.m. on April 8, 1980, and stated that he was pulling over a possible DUI. Dotson then called back and canceled his back-up. At approximately 2:25 a.m. a call came over the radio stating that there was an officer in trouble. Several officers went to the location described over the radio. Dotson was lying at the rear of his car. He had been shot once in the head and once in the side. Some Remington shotgun shells were found near Dotson's body. The appellant's driver's license was lying next to Dotson's body. A traffic ticket book with a partially written ticket to the appellant was lying close to Dotson's chest. The ticket was partially written and cited the appellant for speeding. The time written on the ticket was 2:14 a.m. The tag number written on the ticket matched the tag number of the appellant's car. A shotgun and a box of shells that looked like the empty shells at the scene were discovered at the appellant's residence. Ballistics tests proved conclusively that the shells found at the scene were fired from the appellant's shotgun. Tests also indicated that Dotson was shot at close range.
One of the appellant's psychiatrists testified that the appellant told him that Dotson took his driver's license and went back to his police car; that the appellant became fearful because Dotson was taking too long; that when Dotson exited the car, he was afraid that Dotson was going to shoot him; and that the appellant then walked to the trunk of his car, opened it, took out his shotgun, shot Dotson, and drove away. Another psychiatrist testified that the appellant told him that after taking his license, Dotson went back to the police car and made a call on his radio, that Dotson got out of his car "looking mean" and told the appellant he was going to search him (R. 899); and that the next thing he remembered was clicking the trigger of his shotgun. The officer who rode with the appellant in the squad car after his arrest testified that the appellant stated that he did not want to shoot Dotson, but Dotson should not have stopped and harassed him.
The appellant contends that he was entitled to a charge of self-defense because imprints from shotgun pellets were found on Dotson's gun indicated that Dotson's gun was pointed toward the direction from which the pellets came. Dotson's gun had not been fired. The appellant further contends that his statement to his psychiatrist that he thought Dotson was going to shoot him entitled him to a charge on self-defense. We disagree. The totality of the circumstances surrounding the killing did not justify such a charge.
"To sustain a claim of self-defense, it is necessary that the following conditions be established: (1) that the accused was in actual or apparent peril; (2) that the accused was unable to retreat; and (3) that *Page 962 
the accused was free from fault in bringing on the difficulty."Cooper v. State, 364 So.2d 382, 386 (Ala.Crim.App.), cert.denied, 364 So.2d 388 (Ala. 1978). "The burden of establishing inability to retreat and the requisite state of imminent peril is on the accused." Cooper at 386. "If the undisputed evidence fails to establish one of these conditions, or there is no evidence warranting the findings of these conditions, the accused is not entitled to have his claim of self-defense submitted to the jury." Cooper at 386. See also Payne v. State,48 Ala. App. 401, 265 So.2d 185 (Ala.Crim.App. 1972). "In the absence of evidence tending to show both that the appellant was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was able to retreat." Payne, 48 Ala. App. at 406,265 So.2d at 190. "It is not an invasion of the province of the jury for the court to determine whether, under the facts proven, the defendant may set up self-defense." Raines v. State,455 So.2d 967, 974 (Ala.Crim.App. 1984). "A court should not instruct on self-defense when there is no evidence to sustain the plea."Raines at 974; King v. State, 478 So.2d 318
(Ala.Crim.App. 1985).
The appellant failed to meet his burden. There was no basis for a jury to believe that the appellant was in actual or apparent peril. Even if there was a basis for such a finding, there was absolutely no evidence of retreat. This is especially true in light of the fact that the appellant had time to retrieve his shotgun from his car. This would be true whether he retrieved it from the trunk or from the seat of his car. Thus, viewing the evidence in the light most favorable to the appellant, the evidence was not sufficient to warrant the conclusion, as a matter of fact, that the appellant acted in self-defense.
For the reasons set forth above, this case is due to be, and hereby is, affirmed.
AFFIRMED.
PATTERSON, P.J., and TAYLOR, J., concur.
McMILLAN, J., concurs specially with opinion.
BOWEN, J., dissents with opinion.
[1] A federal court reversed Owen's conviction on Fifth Amendment grounds and not Fourth Amendment grounds. Thus, the law relied on in the previous decision is still applicable to this issue.