LEIGH M. CLARK, Supernumerary Circuit Judge.
This is another appeal from another conviction of another homicide that was started by another fight between two or more men about the same woman.
The charge is murder in the first degree; the verdict was guilty of murder in the second degree; the sentence was imprisonment in the penitentiary for twenty-one years and a day.
The fight started in the lounge of the Pekin Cafe, in Montgomery; the victim, Johnny Williams, was killed in front of the cafe, after considerable fighting had gone on in the lounge between or among the victim, defendant and one Jessie Maner.
The first witness as to the fight was the woman, Lucille Harris, common law wife of the victim for two and a half years; at the time of the trial living with defendant. She testified that she and her then common law husband were having a fight in the cafe, her husband hitting her four or five times, and that several people came over to break it up, including Tommy Lowery. Lowery and Williams began to tussle; the witness’ girl friend drug her into the bathroom; she looked out and saw the owner fire a pistol. Tommy Lowery then ran out the door of the Kozy Room. At that time she saw Jessie Maner and Johnny Wil *832 liams on the floor struggling; Jessie Maner was on top of Williams and was coming down on Johnny Williams with his “dutch,” which, according to the context of the word as used by other witnesses, seems to be a vernacularism of the word “dirk.” She said that Williams had his knife while he and Maner were fighting on the floor. Another shot was fired by an owner of the place, which did not stop the fight, but one of the owners took a bar stool and hit Maner on the back of the head and thereby broke up the fight on the floor. The three men mentioned as having struggled and fought in the lounge or barroom, called Kozy Room, of the cafe, went outside to the sidewalk or street. Two knives were found on the floor of the Kozy Room and another was found elsewhere in the Kozy Room.
There was testimony that while the fighting was going on in the Kozy Room defendant stabbed Williams in a shoulder.
Two witnesses for the prosecution testified that they saw fighting in front of the cafe, that defendant stabbed Williams in his chest with a knife, that Williams then fell backward and did not arise. He was officially determined to be dead and taken away by an ambulance.
Dr. Richard Roper of the Department of Toxicology and Criminal Investigation testified that his post-mortem examination of Williams revealed that there were ten wounds upon the body. He listed one on the chin, one on the cheek, one over the left ear, three on the back area of the left shoulder, one on top of the right shoulder, two of the left arm and “a penetrating wound or cut in the center area of the chest.” He concluded that the wounds were made with a knife or a knife-like object. He said that it was. his opinion that the wound “in the chest would be the only one that would be a fatal wound.” He said the wounds in the back and shoulder area “did not penetrate -vital organs or arteries.” He further said that in his opinion death resulted from hemorrhage or bleeding and shock “associated with the stab wound to the chest, in which the heart and a major artery were penetrated.”
At the conclusion of the State’s case, defendant moved to exclude the evidence, which motion was overruled. Defendant did not testify. Evidence for defendant consisted of the testimony of only one witness, Mr. Dale Segrest. He testified that while driving an automobile he observed a melee in front of the Pekin Cafe and reported it to the police. He saw a black male and several other people fighting with him, some of them holding him and some of them beating on him. He saw “another black male hit him just a broad hand lick in the face. And at that time the man fell on his back.” He said that “at least six or seven people were actively involved in the fight.” He was not able to identify any of the fighters or others around them.
Defendant filed a pretrial motion to produce a list of documents, including “any confessions or admissions made by defendant” and a list of “all information . which may be exculpatory in nature” and “the names and addresses of all the witnesses the State intends to call in its behalf on the trial of this cause.” The motion was denied by the court eleven days prior to trial.
Within thirty days after defendant was convicted, he filed a motion for a new trial alleging, inter alia, that the verdict was against the weight of the evidence. When the motion was heard, he asked leave to include the additional ground of newly discovered evidence, and, with the permission of the court and no objection by the State, he presented testimony relevant to the additional ground.
The evidence presented on the Motion for New Trial consisted chiefly of the testimony of one Willie Shelby, who testified that he saw the fight in front of the Pekin Cafe, that defendant was engaged in it, but that one Jessie Maner struck Williams with a “dutch,” that as soon as Maner struck Williams, Williams fell down and did not “ever get up.” The witness Shelby had also seen the fight in the lounge. His testimony on the Motion for New Trial was to the effect that he was in the immediate area of the fight as it took place in front of the cafe. *833 He said that Williams and defendant had been fighting with knives before Maner stuck Williams with the “dutch,” but that Shelby had pulled defendant away from Williams. It developed in testimony on the Motion for New Trial that Maner had given the police a statement setting forth substantially the same information contained in his testimony on the hearing of the Motion for a New Trial. It developed also that on the trial of Jessie Maner, which took place between the trial of defendant in the instant case and the hearing on his Motion for New Trial, the witness Willie Shelby testified for the State and at that time gave substantially the same testimony as he did on the Motion for New Trial in this case. It was shown further that on the trial of Jessie Maner, Maner was found guilty of murder in the second degree and sentenced to ten years imprisonment.
One of the few insistencies of appellant is that the trial court erred in overruling defendant’s pretrial Motion to Produce, and appellant complains of injury to him as the result of such action of the court, in that if the prosecution had been required to produce all the information called for in the Motion to Produce, defendant would have had the benefit of the information revealed by the witness Jessie Maner and could have used him effectively, to the benefit of defendant, on the trial of this case. Appellee counters largely with the the contention that “defendant’s request was stated so extremely broad as to amount to a fishing expedition,” that there “is no specific request stated which would require the prosecution to respond.”
Appellant relies chiefly upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, holding that the suppression by the prosecution of evidence favorable to an accused upon request, violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution. Appellee urges that the comprehensive contents of the Motion to Produce constituted a “shotgun approach . . . expressly rejected and criticized in both United States v. Ahmad [D.C.], 53 F.R.D. 186 (1971) and Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972).”
The glare of the substantive principle declared in Brady tends to obscure procedural interstices preceding the pronouncement. On certiorari, the United States Supreme Court affirmed the judgment of the Maryland Court of Appeals (226 Md. 422, 174 A.2d 167) in holding that the suppression of evidence by the prosecution denied petitioner due process of law and that the judgment of the trial court should be reversed and the case remanded for a retrial.[1] The proceeding had gone to the Court of Appeals of Maryland on an appeal from a denial of a petition for post-conviction relief under the Maryland Post Conviction Procedure Act. The same case previously had been before the Court of Appeals on two previous occasions. 220 Md. 454, 154 A.2d 434 and 222 Md. 442, 160 A.2d 912. On the first, there was an affirmance of Brady’s conviction. The second was an appeal from a denial of a motion for a new trial based on the newly discovered evidence that had been suppressed by the prosecution. Such appeal was dismissed .without prejudice to the relief subsequently sought in the post-conviction proceeding. The court therein held that the action of the trial court in overruling a motion for a new trial on the ground of newly discovered evidence was not reviewable on appeal and that defendant’s sole remedy, if any, was under the statutory Post Conviction Law of Maryland.
If our consideration as to the particular problem now discussed is to be limited to whether the trial court should be reversed for denying defendant’s Motion to Produce, we would be required to ponder seriously the contention of appellee as to the generalities and unlimited nature of the contents of the motion. Furthermore, except for the showing made on the hearing of the Motion *834 for a New Trial, the record presents no suggestion of any prejudice to appellant in the overruling of the Motion to Produce. This being true, our attention is focused upon whether there was error in overruling defendant’s Motion for a New Trial.
Like the Court of Appeals of Maryland on the second appeal in Brady, we are confronted with procedural questions, though not precisely the same in this case. There exists no specially created statutory post-conviction remedy in Alabama, as in Maryland. Even so, if there is merit in appellant’s contention that he was denied due process under the principle established by Brady, other post-conviction remedy will be available to him unless a decision can be made in his favor on this appeal.
The Motion for New Trial, as indicated above, was filed within the thirty-day period required for the court to have jurisdiction to grant a new trial. Code of Alabama, Title 13, Section 119. It was duly and regularly continued until the date it was heard and ruled upon. However, at that time more than thirty days had expired since the judgment of a conviction and at that time the motion contained no ground relative to newly discovered evidence, or the action of the court as to defendant’s Motion to Produce, or as to any claimed suppression of evidence by the prosecution. It is clear that within such thirty-day period defendant was not in a position to make any claim as to newly discovered evidence or as to the testimony of Willie Shelby on the trial of Jessie Man-er, for Jessie Maner was not tried until more than thirty days after the trial of appellant.
It has been uniformly held that after the expiration of thirty days from the rendition of a final judgment, no additional grounds can be assigned to a motion for a new trial filed within the thirty-day period that are not germane to, or merely elabora-tive of, grounds previously assigned. Seibold v. State, 287 Ala. 549, 253 So.2d 302; Lane v. State, 40 Ala.App. 174, 109 So.2d 758; Burton v. State, 40 Ala.App. 146, 109 So.2d 311; Latham v. State, 38 Ala.App. 92, 77 So.2d 499, cert. stricken 262 Ala. 108, 77 So.2d 502.
We find ourselves in a position similar to that of the Court of Appeals of Maryland in Brady v. State, 222 Md. 442, 160 A.2d 912, in holding that the trial court is not to be reversed for denying or overruling defendant’s Motion for a New Trial, but that the action of the court in this respect should be without prejudice to the right of appellant to present the question to the trial court in a post-conviction petition, separate and distinct from this proceeding.
Appellant’s insistence that the trial court should have charged the jury on the subject of self-defense is answered adversely to appellant in Payne v. State, 48 Ala. App. 401, 265 So.2d 185, cert. denied 288 Ala. 748, 265 So.2d 192, cert. denied 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669, in which it was held that for an accused to be entitled to charges on the law of self-defense, he must first produce evidence warranting findings that he was in actual or apparent imminent peril and was unable to retreat. No such evidence was presented in this case. In saying this, we are not overlooking the contention of appellant to the effect that there was some evidence that while the fight was taking place in the Kozy Room appellant was in apparent or actual peril and that he was unable to retreat, but there was no such evidence as to the fight in front of the Pekin Cafe. As to that fight, the issue was whether defendant struck or stabbed Williams. The prosecution contended that he did; defendant contended that he did not. The prosecution presented evidence that he did; defendant did not take the stand, but evidence as to what he stated after the occurrence was to the effect that he did not fight Williams outside of the Pekin Cafe.
Appellant urges error in the action of the trial court in overruling defendant’s motion to suppress testimony of Detective Humphrey as to a statement (referred to by appellant as a confession) made by defendant to Detective Humphrey. Appellant assigns two reasons: (1) that the court had *835 overruled defendant’s Motion to Produce, which called for the production of such a statement, and (2) that defendant was under the effects of alcohol at the time he signed the statement. As to (1), it is to be noted that there was a written Motion to Suppress “evidence obtained against” defendant on the same day (about two weeks before trial) that the heretofore mentioned Motion to Produce was filed. The Motion to Suppress referred to “the statement of defendant,” alleging that it was “given as result of coercion, threats, promise of reward and slant or trick.” No reference is made therein to the statement’s being made while defendant was under the influence of alcohol. The written Motion to Suppress was continued by the court to the date of trial, to be heard by the trial judge, a different judge from the one who ordered the continuance. It appears that the trial judge never made a ruling on the written Motion to Suppress. It also appears that no action was requested on the Motion to Suppress until the prosecution sought to introduce the “statement,” at which time counsel for defendant stated:
“We move to suppress at this point in time, Your Honor. We haven’t had a chance to examine the statement. We filed a motion to produce which was overruled and we feel that without being able to see the statement — ”
At that time the court had excused the jury from the courtroom, and a “voir dire examination” of Detective Humphrey was conducted, in which both counsel for the State and counsel for defendant participated. In the voir dire examination conducted by defendant’s counsel, the witness was asked whether at the time the statement was made defendant still appeared to be under the effects of alcohol. The witness replied, “Yes, sir. He had been drinking when he come in.” The witness was then asked by counsel for the State whether defendant was drunk, and he replied, “No, sir, he was not drunk.” Thereupon counsel for defendant stated:
“Your Honor, the requirement is that it be an informed consent. And a man under the influence of alcohol is debilitated and cannot form an intelligent consent.” “THE COURT: Overrule the objection.
Before the jury returned to the courtroom, the following occurred:
“MR. PILGRIM: Your Honor, have you ruled on the motion to suppress? I believe you have?
“THE COURT: I overruled your objection. Are we ready?
“MR. PRICE: The State is ready, Your Honor.
“MR. PILGRIM: We are ready.
“THE COURT: Let the jury back in.”
Upon interrogation by the State of Detective Humphrey as a witness, no part of the written statement was offered; he was asked by defendant to read a part of the statement to the jury, which he did. In none of the testimony as to what defendant had told Detective' Humphrey, either in writing or orally, was there a confession by defendant that he killed Williams. On the contrary, defendant made it clear that defendant’s statement to Detective Humphrey was to the effect that defendant did not participate in the fight with Williams out of the Pekin Cafe. The statement of defendant to Detective Humphrey was so impressive on the point, that defendant’s counsel had Detective Humphrey read the crucial part of the statement the second time, as shown by the following:
“Q Would you please read that again slowly?
“A It says, I was standing on the corner when Johnny came out of the Kozy Room and Jessie Maner came running out after him and ran up behind him and asked Johnny, niger, what did you cut me for? And then Jessie struck Johnny with the dutch. It looked like he stuck him in the front. I believe he stuck him two times.”
It appears to us that after defendant’s counsel read the statement made by defendant to Detective Humphrey, he was pleased with it as counsel for defendant, that there was more in it favorable to defendant than there was to the State. At any rate, defendant did not press its “Motion to Sup *836 press,” and defendant did not object to the testimony of Detective Humphrey as to the statement made by defendant on the ground that the Motion to Suppress had been denied, nor on any ground assigned in the Motion to Suppress. The ground of objection was exclusively as to defendant’s condition as affected by alcohol at the time he made the statement. It is clear that defendant was not under any such state of intoxication as to preclude the admission in evidence of the statement made by him. Carter v. State, 53 Ala.App. 43, 297 So.2d 175; Stewart v. State, 49 Ala.App. 681, 275 So.2d 360. Before the statement was admitted in evidence, there was ample proof made of its trustworthiness and voluntariness.
We find that no prejudicial error occurred in connection with the admission in evidence of the statement of defendant to Detective Humphrey. The statement gives us additional ground for concern as to the question whether there was compliance with due process as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, as previously discussed, for the statement of defendant is in line with the testimony of Willie Shelby presented on the Motion for New Trial in this case on the question whether defendant fatally stuck Williams in front of the Pekin Cafe, and underscores the fact that our action in this case should expressly show, as we herein state, that it is without prejudice to a request for post-conviction relief by an appropriate separate and distinct proceeding. Other than as to the merit of the point made by appellant as affected by the principle set forth in Brady v. Maryland, supra, which is not within our authority to decide on this appeal, we find that there was no error prejudicial to defendant on the trial of the case, and that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.

. The remand for retrial was as to the punishment only, but this fact is not of significance in' the instant case.