Rel: December 15, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

―――――――――――――――

### CR-2022-1168

―――――――――――――――

### John Michael Cosper

### v.

### State of Alabama

### Appeal from Cullman Circuit Court
### (CC-21-59 and CC-21-180)

McCOOL, Judge.

John Michael Cosper appeals his convictions for two counts of second-degree aggravated stalking, see § 13A-6-91.1, Ala. Code 1975, and one count of violating a domestic-violence order, see § 13A-6-142, Ala. Code 1975. The trial court sentenced Cosper to serve 10 years'

imprisonment for each of his stalking convictions and to serve 1 year of incarceration in the Cullman County jail for his violating-a-domestic-order conviction, with the sentences to run concurrently.

Facts and Procedural History

In March 2020, Cosper's former wife, Brandi, obtained from the trial court a protection-from-abuse order ("the PFA order") that prohibited Cosper from "harassing, stalking, annoying, threatening, or engaging in conduct that would place [Brandi] in reasonable fear of bodily injury." (C. 156.) At trial, the State asked Brandi to explain the basis for the PFA order, and she testified as follows:

"Q. What was the basis for you asking for [the PFA order]?

"A. The basis of that was because [Cosper] was following me everywhere I was going. At work, he was leaving voicemails cussing me out. I was working at the Diagnostic Center at that time. It was interfering with -- I was trying to hide it the best I could, but then it started getting really, really bad to where he knew where I was at all times. If I was at, you know, Walmart, he's texting me, you know, why are you here, why are you there, threatening, threatening me or -- he would start hallucinating if I was -- that I was always a whore and seeing somebody and --

"Q. But you were divorced?

2

"A.   Yes, we were, but we were off and on. But still, at that time, I was trying to keep him away, completely away from me because he was so paranoid and crazy."

(R. 47-48.)

According to Brandi, Cosper continued to harass her after she obtained the PFA order. Specifically, Brandi testified that Cosper had placed a tracking device on her automobile on two separate occasions (a fact Cosper admitted at trial), that he had repeatedly followed her to various places, that he "would be calling [her] all night" (R. 70), that he had "show[n] up every day knocking on [her] back door" (R. 81-82), that he had "busted [her] front door" (R. 81), and that he had been "violent and verbally abusive." (R. 83.) Regarding the effect Cosper's actions had on her, Brandi testified as follows:

"Q. Did the fact that [Cosper] was doing this, did this cause you any kind of mental anguish or emotional anguish? Were you scared?

"A. Yes, sir, I was because he was pretty bad off."

(R. 57.) Brandi also testified that Cosper's actions had threatened her employment; specifically, she testified that she "[got] in trouble at work" because Cosper "would not stop calling [her] work." (R. 70.)

3

Cosper disputed Brandi's testimony that he had caused her any fear and, in support of that contention, testified that, even after Brandi obtained the PFA order, she would initiate contact with him "[e]very day." (R. 148.) Cosper specifically testified to one telephone call he had received from Brandi around July 4, 2020:

> "Q. So you had a telephone call from [Brandi], and what was the call?
>
> "A. She called and said the 4th of July was coming up next weekend. She said that she wanted to rent a motel room and watch the fireworks. She said she would buy some steaks, her treat, and I told her that I was scared to; I didn't want to get in any more trouble than what I already was. But I'd love to, wish I could, but -- you know. And I've got it recorded if anybody don't believe me.
>
> "Q. All right. So you have a recording of that particular telephone call that you've just described?
>
> "A. I do. Yes, sir.
>
> "Q. And tell the court, how is it recorded?
>
> "A. I downloaded an app on my phone and recorded it."

(R. 153-54.) Cosper's court-appointed counsel, Edward Coey, then sought to have the recording of that telephone call admitted into evidence "for the purpose of authenticating" Cosper's testimony (R. 156), and the State objected on various grounds. The trial court stated that it could not make

4

CR-2022-1168

an admissibility ruling until it heard the recording, at which point the following colloquy occurred:

"[THE STATE]: I'd like to hear the whole thing, by the way, not just the part where --

"[COSPER]: It's a 37-minute video recording and only just a portion of it is --

"COEY: The only -- the whole thing is lengthy. We weren't intending to inject that whole thing into this. We were only intending to inject the part that was directly relevant to what [Cosper] just said.

"….

"THE COURT: But in the interest of completeness if we're going to include any of it, I have to know what all of it says so I can determine if any of it should be admitted. So let's have it.

"[COSPER]: The whole thing?

"THE COURT: Yes, sir.

"[COSPER]: I'm not sure if I have -- I don't have enough battery to play the whole thing.

"[THE STATE]: Judge, we object.

"THE COURT: Mr. Coey, it's just a black-letter rule, you can't offer just a portion of something without --

"COEY: Yes. I understand. Well … [w]e don't have the electronic capability to play the whole thing, so I guess we'll just have to move on.

5

"[THE STATE]: Once again, Judge, the part they're wanting to enter is not relevant to anything. [Brandi] has testified that that conversation took place.

"THE COURT: Right, I understand. I'm assuming that there's not anything that she blurted out on the phone that she didn't admit on the stand. I just don't know that. But you're not indicating that she said anything other than what she testified to and what Mr. Cosper just testified to?

"COEY: That's the crux of it, yes.

"THE COURT: Well, I think that would be cumulative. And since we can't hear the whole thing, I'm not going to allow just a portion.

"COEY: I understand."

(R. 159-60.)

The jury convicted Cosper of two counts of second-degree aggravated stalking and one count of violating a domestic-violence order. On August 16, 2022, the trial court held the sentencing hearing and pronounced Cosper's sentences, and the court issued a written sentencing order the next day. Following the sentencing hearing, Coey withdrew from the case, and Cosper obtained new counsel.

On September 2, 2022, Cosper, through his new counsel, filed a motion for a new trial in which he raised two claims of ineffective assistance of counsel. First, Cosper argued that Coey should have

objected to Brandi's testimony that she had sought the PFA order because Cosper was "hallucinating," "paranoid," and "crazy." Second Cosper argued that Coey should have ensured that the recording of Brandi's telephone call to Cosper was "transferred from [Cosper's] cellular telephone to a medium that would have allowed it to have been heard by [the trial court] and the jury in its entirety." (C. 66.) Approximately 10 days later, the trial court issued an order scheduling a hearing on Cosper's motion for October 11, 2022.

On September 22, 2022, Cosper filed an amended motion for a new trial in which he raised a third claim of ineffective assistance of counsel -- namely, that Coey had had a conflict of interest that required him to withdraw from the case. Specifically, Cosper alleged that Coey had "represented Cosper's landlord in an eviction proceeding against Cosper during his representation of Cosper in the criminal matter." (C. 69.)

On October 11, 2022, the trial court held the scheduled postjudgment hearing and denied Cosper's motion for a new trial. Cosper filed a timely notice of appeal.

## Discussion

7

On appeal, Cosper argues that the trial court erred by denying his motion for a new trial because, he says, he raised three meritorious ineffective-assistance-of-counsel claims.

> "'"'"It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error."'" Hosea O. Weaver & Sons, Inc. v. Towner, 663 So. 2d 892, 895 (Ala. 1995) (quoting Kane v. Edward J. Woerner & Sons, Inc., 543 So. 2d 693, 694 (Ala. 1989), quoting in turn Hill v. Sherwood, 488 So. 2d 1357 (Ala. 1986)).'

"Ex parte Hall, 863 So. 2d 1079, 1081-82 (Ala. 2003).

"In McNair v. State, 706 So. 2d 828 (Ala. Crim. App. 1997), this Court explained:

> "'In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
>
> > "'"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [to the United States Constitution]. Second, the

8

defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable."

"'Id. at 687, 104 S. Ct. at 2064.

"'"The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under 'prevailing professional norms,' was 'reasonable considering all the circumstances.'" Daniels v. State, 650 So. 2d 544, 552 (Ala. Cr. App. 1994) (quoting Strickland, 466 U.S. at 688, 104 S. Ct. at 2065). Once a defendant has identified the specific acts or omissions that allegedly were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall outside the wide range of professionally competent assistance. Id.

"'When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So. 2d 6 (Ala. Cr. App. 1992), cert. denied, 511 U.S. 1100, 114 S. Ct. 1870, 128 L. Ed. 2d 491 (1994); Luke v. State, 484 So. 2d 531 (Ala. Cr. App. 1985).

"'"….."

9

"'....

"'And, even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless it is also established that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

"'In an ineffective assistance of counsel claim, the burden is on the claimant to show that his counsel's assistance was ineffective. Ex parte Baldwin, 456 So. 2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S. Ct. 2727, 86 L. Ed. 2d 300 (1985).'

"706 So. 2d at 839."

Hutcherson v. State, 243 So. 3d 855, 862-64 (Ala. Crim. App. 2017). With these principles in mind, we turn to Cosper's ineffective-assistance-of-counsel claims.

## I.

Cosper argues that Coey provided ineffective assistance by not objecting to Brandi's testimony that she had sought the PFA order because Cosper was "hallucinating," "paranoid," and "crazy." In support of his contention that Brandi's testimony was inadmissible, Cosper argues that, if the State wanted Brandi to offer an opinion on his mental

10

state, it should have qualified her as an expert witness under Rule 702, Ala. R. Evid., which provides that an expert witness may testify in the form of an opinion if certain requirements are met.

However, Rule 701, Ala. R. Evid., provides that, in limited circumstances, a lay witness may also testify in the form of an opinion. Specifically, Rule 701 states:

> "If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."

Moreover,

> "[t]he Alabama Supreme Court in Ex parte Lee, 506 So. 2d 301 (Ala. 1987), stated:
>
> > "'In Alabama, a lay witness may give his opinion on the question of a defendant's sanity or insanity as long as the proper predicate has been laid. Williams v. State, 291 Ala. 213, 279 So. 2d 478 (1973); Lokos v. State, 434 So. 2d 818 (Ala. Crim. App. 1982), affirmed, 434 So. 2d 831 (Ala. 1983); Carroll v. State, 370 So. 2d 749 (Ala. Crim. App.), cert. denied, 370 So. 2d 761 (Ala. 1979). To lay a proper predicate for the admission of such an opinion, a witness must first have testified: (1) to facts showing that he had an adequate opportunity to observe such defendant's conduct in general, and (2) to his personal observation of specific irrational conduct of the defendant. See Williams

11

v. State, supra; Lokos v. State, supra; Carroll v. State, supra. See also C. Gamble, McElroy's Alabama Evidence, § 128.02 (3d ed. 1977). ...'

"506 So. 2d at 303."

Albarran v. State, 96 So. 3d 131, 174 (Ala. Crim. App. 2014).

In this case, Brandi's testimony that Cosper was "hallucinating," "paranoid," and "crazy" was based on her personal observations of Cosper's "'specific irrational conduct.'" Albarran, 96 So. 3d at 174 (citation omitted). Specifically, Brandi testified that, even after she obtained the PFA order, Cosper "follow[ed] [her] everywhere [she] was going," that he "le[ft] voicemails cussing [her] out," that he sent her threatening text messages, that he believed she "was always a whore and seeing somebody," that he was violent toward her and caused physical damage to her home, and that he was verbally abusive to her. Thus, there was a sufficient predicate for Brandi to testify to her opinion of Cosper's mental state, which is to say that her testimony in that regard was admissible. See Albarran, 96 So. 3d at 174 (holding that a witness could testify as to whether he believed that the defendant was "crazy" because the witness's testimony was based on his personal observations of the defendant's conduct). Therefore, there was no merit to the

12

objection that Cosper argues Coey should have raised, and it is well settled that defense counsel cannot be deemed ineffective for failing to raise a meritless objection. See Van Pelt v. State, 202 So. 3d 707, 732 (Ala. Crim. App. 2015) (holding that, because the witness's testimony was admissible, "trial counsel was not ineffective for failing to object to the testimony"). Accordingly, Cosper has failed to demonstrate that Coey performed deficiently by not objecting to Brandi's opinion of his mental state.

Furthermore, even if that part of Brandi's testimony was inadmissible, Cosper has not demonstrated that "'"there is a reasonable probability that … the result of the proceeding would have been different"'" if her testimony had been excluded. Hutcherson, 243 So. 3d at 864 (citations omitted). According to Cosper, there was a "substantial" likelihood that, given Brandi's testimony, "the jury perceived him to be someone suffering from severe mental illnesses." (Cosper's reply brief, p. 4.) However, even if that contention is true, Cosper does not explain why the jury's belief that he was suffering from "severe mental illnesses" would have impacted the jury's verdict. The jury was tasked with determining whether Cosper committed second-degree aggravated

13

stalking and whether he violated a domestic-violence order, and there was ample evidence to support a finding that Cosper committed those offenses. Also, the trial court expressly instructed the jury that guilty verdicts on those charges had to be based solely on the jury's determination that the State had proven the elements of those offenses beyond a reasonable doubt, and we presume the jury followed the trial court's instructions. Anderson v. State, 360 So. 3d 1117, 1122 (Ala. Crim. App. 2022). Thus, there is not a reasonable probability that the jury's verdict turned on Brandi's opinion of Cosper's mental state.

For the foregoing reasons, the trial court did not err by denying Cosper's first ineffective-assistance-of-counsel claim.

II.

Cosper argues that Coey provided ineffective assistance by failing to ensure that the recording of Brandi's telephone call to Cosper "had been … transferred from [Cosper's] cellular telephone to a medium that would have allowed it to have been heard by [the trial court] and the jury in its entirety." (Cosper's brief, p. 15.) However, even if Coey performed deficiently in this regard (and we do not suggest that he did), Cosper

14

suffered no prejudice.[1] As Coey explained at trial, the purpose of introducing the recording of Brandi's telephone call was to demonstrate that, despite her allegation that she was afraid of Cosper, she had contacted him a few months after obtaining the PFA order and had told him that "she wanted to rent a motel room" with him. However, Brandi admitted on cross-examination that she and Cosper had been "talking about getting a motel room" around that time. (R. 83-84.) Thus, the trial court correctly found that the recording of Brandi's telephone call would have been cumulative to other evidence presented at trial, and, as this Court has repeatedly stated, defense counsel cannot be deemed ineffective "for failing to present evidence that would have been cumulative to other evidence presented at trial." Peraita v. State, [Ms. CR-17-1025, Aug. 6, 2021] ___ So. 3d ___, ___ (Ala. Crim. App. 2021). Accordingly, the trial court did not err by denying Cosper's second ineffective-assistance-of-counsel claim.

### III.

---

[1]"In reviewing claims of ineffective assistance of counsel, this Court need not consider both prongs of the Strickland test" because "the failure to establish one of the prongs is a valid basis, in and of itself, to deny the claim." Hutcherson, 243 So. 3d at 864 (internal citations omitted).

Cosper argues that Coey provided ineffective assistance as the result of an alleged conflict of interest. Specifically, Cosper alleged that Coey had "represented Cosper's landlord in an eviction proceeding against Cosper during his representation of Cosper in the criminal matter."

In Lowery v. State, 340 So. 2d 830, 834 (Ala. Crim. App. 1976), this Court stated:

> "It has been uniformly held that after the expiration of thirty days from the rendition of a final judgment, no additional grounds can be assigned to a motion for a new trial filed within the thirty-day period that are not germane to, or merely elaborative of, grounds previously assigned."

Likewise, in Jones v. State, 362 So. 2d 1303, 1313 (Ala. Crim. App. 1978), this Court held that one of the defendant's claims on appeal was "not properly presented to this Court for review" because, although the defendant had filed a timely motion for a new trial, the motion had "made no mention whatsoever of the [claim]"; instead, the defendant had raised the claim for the first time after the time for filing a motion for a new trial had expired.

In this case, Cosper first raised his conflict-of-interest claim in the amended motion for a new trial that he filed on September 22, 2022,

16

which was more than 30 days after his sentences were pronounced, and that claim was "not germane to, or merely elaborative of, [the] grounds [he] previously assigned" in his original motion for a new trial but, instead, was an entirely new claim being presented for the first time. Lowery, 340 So. 2d at 843. Thus, because Cosper did not raise this claim within 30 days of the pronouncement of his sentences, "the issue is not properly presented to this Court for review." Jones, 362 So. 2d at 1313.

IV.

Although Cosper has not demonstrated that he is entitled to relief from his convictions, we must remand this case for the trial court to correct Cosper's sentences for his second-degree-aggravated-stalking convictions because the sentences are illegal. Neither party raises an issue concerning those sentences, but it is well settled that an illegal sentence is a jurisdictional issue that this Court must notice ex mero motu. Towns v. State, 293 So. 3d 975, 985 (Ala. Crim. App. 2019).

Aggravated stalking in the second degree is a Class C felony. See § 13A-6-91.1(b). At the time of Cosper's offenses, § 13A-5-6(a)(3), Ala. Code 1975, provided that the sentence for a Class C felony had to be "not more than 10 years or less than 1 year and 1 day and must be in accordance

17

with subsection (b) of Section 15-18-8[, Ala. Code 1975,] unless sentencing is pursuant to Section 13A-5-9[, Ala. Code 1975]," i.e., the Habitual Felony Offender Act.[2] At the time of Cosper's offenses, § 15-18-8(b), provided, in pertinent part:

> "Unless a defendant is sentenced to probation, drug court, or a pretrial diversion program, when a defendant is convicted of an offense that constitutes a Class C or D felony offense and receives a sentence of not more than 15 years, the judge presiding over the case shall order that the convicted defendant be confined in a prison, jail-type institution, treatment institution, or community corrections program for a Class C felony offense or in a consenting community corrections program for a Class D felony offense, except as provided in subsection (e), for a period <u>not exceeding two years in cases where the imposed sentence is not more than 15 years</u>, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of the law to the

---

[2]Effective July 1, 2023, the Alabama Legislature amended § 13A-5-6(a)(3) to remove the requirement that a sentence for a Class C felony "must be in accordance with subsection (b) of Section 15-18-8 unless sentencing is pursuant to Section 13A-5-9." <u>See</u> Act No. 2023-461, Ala. Acts 2023. However, "'a criminal offender must be sentenced pursuant to the statute in effect at the time of the commission of the offense, at least in the absence of an expression of intent by the legislature to make the new statute applicable to previously committed crimes.'" <u>Zimmerman v. State</u>, 838 So. 2d 404, 406 n.1 (Ala. Crim. App. 2001) (quoting 24 C.J.S. <u>Criminal Law</u> § 1462 (1989)). We have reviewed Act No. 2023-461, and we find no indication that the Legislature intended for the amended version of § 13A-5-6(a)(3) to apply retroactively. Thus, the trial court was required to sentence Cosper for his Class C felonies based on the version of § 13A-5-6(a)(3) that was in effect at the time of his offenses.

contrary and that the defendant be placed on probation for a period not exceeding three years and upon such terms as the court deems best."[3]

(Emphasis added.)

In short, then, at the time of Cosper's offenses,

"§§ 13A-5-6(a)(3) and 15-18-8(b), Ala. Code 1975, d[id] not allow a trial court to impose a 'straight' sentence for a Class C felony when the Habitual Felony Offender Act does not apply. Instead, under §[§] 13A-5-6(a)(3) and 15-18-8(b), once the trial court impose[d] on a defendant a sentence length between 1 year and 1 day and 10 years, the trial court [had to] either:

      "(1) Sentence the defendant to probation, drug court, or a pretrial diversion program; or

      "(2) 'Split' the confinement portion of the defendant's sentence to a period not exceeding two years, suspend the remainder of the defendant's sentence, and impose a term of probation on the defendant that does not exceed three years.

"Here, [Cosper] is not a habitual felony offender and was not sentenced under § 13A-5-9, Ala. Code 1975. Yet the trial court sentenced [Cosper] to a 'straight' 10-year sentence in the Alabama Department of Corrections [for each of his second-

___

[3]Act No. 2023-461, Ala. Acts 2023, amended § 15-18-8, and, under the amended statute, a trial court is not required to split a sentence for a Class C felony but has the discretion to do so. However, because there is no indication that the Legislature intended for the amended version of § 15-18-8 to apply retroactively, the trial court was required to sentence Cosper under the version of the statute that was in effect at the time of his offenses. Zimmerman v. State, 838 So. 2d 404, 406 n.1 (Ala. Crim. App. 2001).

degree-aggravated-stalking convictions], which, as explained above, [was] impermissible under § 13A-5-6(a)(3), Ala. Code 1975[, at the time of Cosper's offenses]. Thus, we must remand this case to the trial court to impose a sentence on [Cosper] for [each of] his conviction[s] for [second-degree aggravated stalking] that complies with [the versions of] §§ 13A-5-6(a)(3) and 15-18-8(b) [that existed at the time of his offenses].

"In so doing, however, we note that [Cosper's] 10-year sentence[s] [are] valid; thus, the trial court cannot change the underlying sentence[s]. See generally Moore v. State, 871 So. 2d 106, 110 (Ala. Crim. App. 2003) (recognizing that, when the base sentence imposed by the trial court is valid, the trial court cannot alter it on remand)."

Born v. State, 331 So. 3d 626, 637-38 (Ala. Crim. App. 2020) (footnotes and citations to record omitted).

Conclusion

We affirm Cosper's convictions and his sentence for his violating-a-domestic-order conviction. We reverse Cosper's sentences for his second-degree-aggravated-stalking convictions and remand the case for the trial court to hold a new sentencing hearing at which it imposes sentences that comply with the versions of §§ 13A-5-6(a)(3) and 15-18-8(b) that existed at the time of Cosper's offenses. The trial court shall take all necessary action to ensure that the circuit clerk makes due return to this Court within 42 days of the date of this opinion, and the record on return to

remand shall include the transcript of the sentencing hearing and the trial court's amended sentencing order.

AFFIRMED AS TO CONVICTIONS; AFFIRMED IN PART AND REVERSED IN PART AS TO SENTENCES; AND REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum and Cole, JJ., concur. Minor, J., concurs specially, with opinion.

MINOR, Judge, concurring specially.

I concur in the Court's decision. I write separately to explain more fully why I concur with Part III, in which the Court holds that John Michael Cosper's conflict-of-interest claim is not properly before this Court for review. As the Court explains, although Cosper timely moved for a new trial, he did not raise the conflict-of-interest claim in that motion. Instead, he waited until more than 30 days after the trial court had pronounced his sentences. The Court, citing Lowery v. State, 340 So. 2d 830, 834 (Ala. Crim. App. 1976), and Jones v. State, 362 So. 2d 1303, 1313 (Ala. Crim. App. 1978), holds that the claim is not properly before us.

In my research, I have found only one citation to Lowery or Jones for that same point after the Rules of Criminal Procedure became effective in 1991: Judge Welch's separate writing concurring in the result in Edwards v. State, 991 So. 2d 787 (Ala. Crim. App. 2008). In Edwards, Judge Welch "concur[red] in the result reached in the unpublished memorandum affirming the trial court's denial of Johnny C. Edwards's motion for a new trial." 991 So. 3d at 787 (Welch, J., concurring in the result). Edwards had timely moved for a new trial. More than 30 days

22

later, new counsel for Edwards had filed an amended motion for a new trial in which Edwards, for the first time, alleged claims of ineffective assistance of counsel. According to Judge Welch, this Court in its unpublished memorandum rejected those ineffectiveness claims on the merits. In his view, however, under Lowery the ineffectiveness claims were not properly before this Court.

In Wesson v. State, 644 So. 2d 1302 (Ala. Crim. App. 1994), this Court stated:

> "It is well settled that a motion for a new trial is 'addressed to the sound discretion of the trial court and [his decision thereon] will not be revised on appeal unless it clearly appears that the discretion has been abused.' Nichols v. State, 267 Ala. 217, 228, 100 So. 2d 750, 760-61 (1958). Accord, e.g., Ashley v. State, 606 So. 2d 187, 191 (Ala. Cr. App. 1992); Maddox v. State, 520 So. 2d 143, 154 (Ala. Cr. App. 1986). This principle, of necessity, must grant to the trial court the discretion to decide whether it will consider grounds at a hearing on a motion for a new trial that were not set forth in that motion. We observe that Rule 24.1, [Ala. R. Crim. P.], which governs motions for new trial, clearly contemplates the filing of a written motion. See Form 90 (entitled 'Motion For New Trial'); Rule 24.3 (motion need not be presented to judge in order to perfect filing). Indeed, Justice Maddox has stated that 'a motion for a new trial must be in writing.' H. Maddox, Alabama Rules of Criminal Procedure § 24.1 at 636 (1990) (emphasis added).
>
> "In this case, a written motion for a new trial was filed on August 15, 1993. This motion did not contain the allegation that trial counsel provided erroneous information concerning

23

good time incentive credit. On August 19, only four days after the motion was filed, the motion was set for hearing on September 20, 1993. C.R. 4, 17 (Motion for New Trial). The motion for a new trial was not amended at any time between August 19 and September 20 to add the allegation of good time misinformation. The trial judge essentially stated that he had not received notice that this particular allegation was being raised and that he was therefore not in a position to address the allegation. Under the circumstances presented, we find no abuse of the trial court's discretion in declining to consider this allegation."

644 So. 2d at 1315-16.

This Court's memorandum in Edwards—and Judge Welch's special writing—are not controlling precedent. See Rule 54, Ala. R. App. P. Although in Wesson this Court suggested that the trial court had discretion to consider an amendment filed before the hearing on a motion for a new trial, this Court in Wesson did not mention Lowery or Jones in that portion of its analysis.[4] It is thus unclear that this Court has abrogated the Lowery-Jones rule. At most, I read Wesson as implicitly recognizing that a trial court has discretion to consider an amendment like that filed in Wesson or in this case—but the court need not consider it.

---

[4]This Court in Wesson cited Jones for a different point. See Wesson, 644 So. 2d at 1311.

24

The trial court did not state its reasons for denying the conflict-of-interest claim that Cosper raised in his amended motion for a new trial. Under <u>Lowery</u> and <u>Jones</u>, the trial court's denial of the conflict-of-interest claim was proper. And, under <u>Wesson</u>, the trial court's denial of that claim was a proper exercise of its discretion.